UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                              Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

  Rolls Royce Paschal for Melissa H. Kunig               N/A
     Deputy Clerk                               Court Reporter

Attorneys Present for Plaintiff:           Attorneys Present for Defendant:

     Not Present                         Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT [15]**

     Before the court is Plaintiff Trustees of the Operating Engineers Pension Trust, Plaintiff
Trustees of the Operating Engineers Health and Welfare Fund, Plaintiff Trustees of the
Operating Engineers Vacation-Holiday Savings Trust, Plaintiff Trustees of the Operating
Engineers Training Trust, Plaintiff Trustees of the Operating Engineers Local 12 Defined
Contribution Trust, Plaintiff Engineers Contract Compliance Committee Fund, and Plaintiff
Southern California Partnership for Jobs Fund's (collectively, "Plaintiffs") Motion for Default
Judgment ("Motion" or "Mot."). (Dkt. 15.) The Motion is supported by the declarations of Igal
Khoshlesan, (Dkt. 17, "Khoshlesan Declaration" or "Khoshlesan Decl."), Andrew Q. Thompson
("Thompson"), (Dkt. 18, "Thompson Declaration" or "Thompson Decl."), and Bernardo Ramos
("Ramos") (Dkt. 19, "Ramos Declaration" or "Ramos Decl."). No opposition to the Motion has
been filed. (*See generally* Dkt.) The court found this matter appropriate for resolution without
oral argument. (Dkt. 20.) Based on the state of the record, as applied to the applicable law, the
Motion is **GRANTED**.

**I.    Background**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street Sweeping, Inc.

Plaintiffs allege the following.[1]  Plaintiffs "are the trustees of five express trusts (collectively, the 'Trusts') created pursuant to written declarations of trust (the 'Trust Agreements') between the International Union of Operating Engineers, Local Union No. 12 ('Local 12'), and various multiemployer associations in the construction industry in Southern California and Southern Nevada." (Compl. ¶ 5.)  "The Trusts are . . . labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the" Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c)(5). (*Id.*)  "Plaintiffs, as trustees of the Trusts, are 'fiduciar[ies]' with respect to the Trusts as defined in section 3(21)(A) of" the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.*)

"On or about January 9, 2017, Defendant executed and delivered a written collective bargaining agreement (the 'Master Agreement') to Local 12, whereby Defendant agreed to be bound by the terms and conditions, with certain exceptions, of certain written and existing collective bargaining agreements between various multiemployer associations and Local 12." (*Id.* ¶ 8; Ramos Decl. ¶ 8, Ex. B.)  "On or about January 9, 2017, Defendant executed written acknowledgments and acceptances of each of the Trust Agreements." (Compl. ¶ 9; Ramos Decl. ¶ 8, Ex. D.)  Defendant, a California corporation with its principal place of business in Fullerton, California, is an "employer" within the meaning of the Master Agreement and Trust Agreements, and also under ERISA, and is thus "obligated to make contributions to a multiemployer plan" pursuant to ERISA. (Compl. ¶¶ 7, 11, 14.)  Defendant is also an employer engaged in "commerce" in an "industry affecting commerce" as these terms are defined and used in the LMRA. (*Id.* ¶ 11.)

Under the terms of the Master Agreement and related Trust Agreements, Defendant was obligated to: (1) "submit true, complete, and accurate written monthly contribution reports ('Monthly Reports') to Plaintiffs in a timely manner showing the identity of its employees

---

[1] For purposes of the Motion, the court accepts "the well-pled allegations in the complaint regarding liability" as true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
Sweeping, Inc.

performing work covered by the Master Agreement, the number of hours worked by or paid to
these employees, and based upon the hours worked or amounts paid to employees, the proper
calculation of the fringe benefit contributions due for such employees"; (2) "permit Plaintiffs
and their agents to conduct audits of payroll and related records in order to determine if fringe
benefit contributions have been properly paid pursuant to the Master Agreement and related
Trust Agreements"; and (3) "pay to Plaintiffs fringe benefit contributions, benefits and/or
withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to,
applicable employees." (*Id.* ¶¶ 15.1-15.3.)

"Defendant submitted Monthly Reports to Plaintiffs reflecting work performed by
Defendant's employees during the months of October 2023 through February 2024." (*Id.* ¶ 16;
*see* Ramos Decl. ¶ 14, Exs. F, G.) "By those Monthly Reports, Defendant admitted that it owed
Plaintiffs fringe benefit contributions totaling at least $27,572.93, but Defendant failed to pay to
Plaintiffs the fringe benefit contributions due in violation of the Master Agreement and Trust
Agreements, and its statutorily mandated obligation under section 515 of ERISA [29 U.S.C.
§ 1145], to timely pay fringe benefit contributions to Plaintiffs pursuant to the Master
Agreement and related Trust Agreements for that work." (Compl. ¶ 16.) "Plaintiffs are
informed and believe, and based thereon allege, that Defendant has failed to pay certain
additional amounts of fringe benefit contributions not presently known to Plaintiffs for the
month of February 2024 forward." (*Id.* ¶ 17.)

On April 11, 2024, Plaintiffs filed a Complaint against Defendant for breach of the
Master Agreement and related Trust Agreements and violation of Section 515 of ERISA. (*Id.*
¶¶ 12-26.) In addition to fringe benefit contributions, Plaintiffs seek liquidated damages,
interest, attorney fees, and costs stemming from Defendant's delinquent contributions as
authorized by the Master Agreement, related Trust Agreements, and Section 502(g)(2) of
ERISA, 29 U.S.C. § 1132(g)(2). (*Id.* ¶¶ 20-26.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

## II.    Legal Standards and Discussion

In determining whether granting default judgment is appropriate, the court examines (1) its jurisdiction, (2) whether Plaintiffs meet the procedural requirements for default judgment, (3) whether Plaintiffs meet the substantive requirements for default judgment, and (4) whether it is appropriate to grant the particular relief Plaintiffs seek.

### A. Subject Matter Jurisdiction and Personal Jurisdiction

Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp*., 546 U.S. 500, 501 (2006) (citation omitted). Diversity jurisdiction requires complete diversity between the parties and that the amount in controversy exceeds $75,000. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806); 28 U.S.C. § 1332(a). For a defendant corporation, citizenship is established by the corporation's state of incorporation and "principal place of business." 28 U.S.C. § 1332(c)(2); *Hertz Corp. v. Friend*, 559 U.S. 77, 90-95 (2010).

First, the court finds that Plaintiffs have sufficiently established subject matter jurisdiction. *See* 29 U.S.C. §§ 1132(a), (f) ("The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action," which includes suits "brought . . . by a fiduciary."); *id.* § 1132(e)(1) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the or by a participant, beneficiary, fiduciary, or any referred to in section 1021(f)(1) of this title."); *id.* § 185(a) ("Suits for violation of contracts between an employer and a labor organization

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

Second, the court finds that it may exercise personal jurisdiction over Defendant because Defendant is a corporation organized under the law of California with its principal place of business in Fullerton, California. (Compl. ¶ 7); *see Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) ("The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business.") (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

Courts must also determine whether there was sufficient service of process on the parties against whom default judgment is requested. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992). In this case, the court finds Defendant was adequately served under Federal Rule of Civil Procedure 4. (*See* Dkt. 10; Mot. at 13-14; Thompson Decl. ¶ 8.)

**B.    Procedural Requirements**

The court turns to the procedural requirements of default judgment. A party seeking default judgment must satisfy the procedural requirements of the Federal Rules of Civil Procedure and the Central District of California's Local Rules. *Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc.*, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018). Under Federal Rule of Civil Procedure 55(b), a party may only seek default judgment from the court following an entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). The party also must comply with Local Rule 55-1 by submitting a declaration alongside the motion for default judgment that includes the following information:

> (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-00795-FWS-ADS                      Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
    Sweeping, Inc.

whether that person is represented by a guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2).

L.R. 55-1.

The court finds Plaintiffs have met the procedural requirements for default judgment. The clerk entered default against Defendant on June 11, 2024. (Dkt. 13; Thompson Decl. ¶ 10.) Plaintiffs' counsel represents that Defendant is not an infant, incompetent person, or person protected by the Servicemembers Civil Relief Act. (Thompson Decl. ¶ 11.) Although notice of the motion was not required because Defendant failed to appear, Fed. R. Civ. P. 55(b)(2), Plaintiffs gave Defendant notice of the motion via U.S. Mail. (Dkt. 15-1 (Proof of Service); *see* Thompson Decl. ¶ 14 ("Defendant will also be served with a copy of the present motion concurrently with its filing.").) Therefore, the court finds Plaintiffs satisfied the procedural requirements for entry of default judgment.

### C.  Substantive Requirements (*Eitel* Factors)

When a party seeking default judgment meets the procedural requirements, the court then considers the factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), to determine whether to grant the requested default judgment, including:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
      Sweeping, Inc.

*Id.* at 1471-72. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

### 1. Possibility of Prejudice to Plaintiffs

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Although Defendant was served, it has not appeared in this action. (*See generally* Dkt.) Accordingly, the court finds Plaintiffs will be prejudiced if default judgment is not entered because Plaintiffs will "likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177; *see Bd. of Trs. v. Arena Cleaners USA Inc.*, 2022 WL 3137923, at *4 (N.D. Cal. June 13, 2022) ("Plaintiffs will suffer prejudice if the court does not enter a default judgment against [Defendant] because Plaintiffs otherwise have no means to . . . recover any unpaid contributions to which they are entitled under the agreements."); *see also Seiko Epson Corp. v. Prinko Image Co. (USA)*, 2018 WL 6264988, at *2 (C.D. Cal. Aug. 22, 2018) ("Given Defendant's unwillingness to answer and defend, denying default judgment would render Plaintiffs without recourse."); *Amini Innovation Corp. v. KTY Intern. Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) ("As the Defendant has not appeared in this action, a default judgment is the only means available for compensating Plaintiff."). Indeed, Plaintiffs "would be severely prejudiced if default judgment is not entered because if employers, such as Defendant, are delinquent in their obligations to the employee trust funds, the trust funds are less than fully funded and the plans lose the use of unpaid funds." *Constr. Laborers Tr. Funds for Southern California Admin. Co. v. Rybkin*, 2022 WL 16949654, at *3 (C.D. Cal. July 8, 2022). Therefore, the court finds the first *Eitel* factor weighs in favor of granting default judgment.

### 2. & 3. The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

Even when default is entered, courts must still determine whether the facts alleged give rise a cognizable cause of action because "claims [that] are legally insufficient . . . are not

---

**CIVIL MINUTES – GENERAL**                                        **7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                           Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
    Sweeping, Inc.

established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).
The second and third *Eitel* factors address the substantive merits of a plaintiff's claims and the
sufficiency of the complaint, and "require that a plaintiff state a claim on which [the plaintiff]
may recover." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D.
Cal. 2003); *Eitel*, 782 F.2d at 1471; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.
1978) (explaining "the issue [as to the second and third factors] is whether the allegations in the
complaint are sufficient to state a claim"); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d
1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive
claims and the sufficiency of the complaint are often analyzed together.").

As discussed above, Plaintiffs allege a claim for breach of written collective bargaining
agreements and related trust agreements and violation of 29 U.S.C. § 1145.  (Compl. ¶¶ 12-26.)
The court assesses the sufficiency of each claim in turn.

### i.  Breach of Written Collective Bargaining Agreements and Related Trust Agreements

"The LMRA provides that breaches of collective bargaining agreements are actionable in
federal court." *Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 647 (9th
Cir. 2007) (citing 29 U.S.C. § 185(a)).  Under the LMRA, a claim for breach of a written
collective bargaining agreement functions as a "a straightforward breach of contract" claim.
*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983) (citing *Int'l Union, United
Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal
Corp.*, 383 U.S. 696 (1966)); *see also Trs. of S. Cal. IBEW-NECA Pension Plan v. Servitek
Solutions, Inc.*, 2022 WL 17370529, at *3 (C.D. Cal. Aug. 10, 2022) ("To state a claim for
breach of a written collective bargaining agreement, Plaintiffs must allege elements similar to
that of a common law breach of contract claim.") (citation omitted).  Under California law, the
elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's
performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                          Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
      Sweeping, Inc.

damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)
(citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

The court finds Plaintiffs have adequately alleged a claim for breach of the collective
bargaining agreements. First, Plaintiffs allege both the existence and terms of the Master
Agreement and related Trust Agreements and Defendant's execution of the Master Agreement
and "written acknowledgements and acceptances of each of the Trust Agreements." (Compl.
¶¶ 8-9; *see also* Ramos Decl. Exs. A-D.) Second, Plaintiffs allege Defendant was obligated to
submit Monthly Reports, allow payroll audits, and pay monthly fringe benefit contributions
pursuant to the Master Agreement and Trust Agreements. (Compl. ¶ 15; *see also* Ramos Decl.
Exs. A-D.) Third, Plaintiffs allege Defendant breached the Master Agreement and Trust
Agreements by failing to pay all requisite fringe benefit contributions. (*Id.* ¶¶ 16-17.) Fourth,
Plaintiffs allege they suffered damages as a result of Defendant's breach, including unpaid
fringe benefits, liquidated damages, attorney fees, litigation expenses, and costs. (*Id.* ¶¶ 20-26.)
Thus, the court concludes Plaintiffs adequately allege a claim for breach of the written
collective bargaining agreements and related trust agreements.

### ii. Violation of 29 U.S.C. § 1145

29 U.S.C. § 1145 "provides a federal cause of action to enforce pre-existing obligations
created by collective bargaining agreements." *Trs. of Screen Actors Guild-Producers Pension
& Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009). Section 1145 mandates that
"[e]very employer who is obligated to make contributions to a multiemployer plan under the
terms of the plan or under the terms of a collectively bargained agreement . . . make
contributions in accordance with the terms and conditions of such plan or such agreement." 29
U.S.C. § 1145. To adequately plead a violation of 29 U.S.C. § 1145, Plaintiffs must sufficiently
allege: "(1) the trust fund is a multiemployer plan; (2) the defendant is an employer obligated to
pay contributions under the terms of the plan; and (3) defendant failed to pay contributions in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

accordance with the plan." *Trs. of Eighth Dist. Pension Fund v. Gietzen Elec. Inc.*, 898 F. Supp. 2d 1193, 1198 (D. Idaho 2012) (citation omitted).

The court finds Plaintiffs have adequately alleged a violation of 29 U.S.C. § 1145. First, Plaintiffs allege "[t]he Trusts are now, and were at all times material to this action, labor-management multiemployer trusts." (Compl. ¶ 5.) Second, Plaintiffs allege Defendant entered into the Master Agreement and acknowledged and accepted the Trust Agreements, which collectively required Defendant to submit fringe benefit and other contributions, as well as reports regarding the requisite contributions, on a monthly basis. (Compl. ¶¶ 8-9, 15.) Third, Plaintiffs allege Defendant failed to make all requisite fringe benefit contributions beginning in October 2023. (*Id.* ¶¶ 16-17.) Thus, the court concludes Plaintiffs sufficiently allege a claim for a violation of 29 U.S.C. § 1145. *See, e.g.*, *Trs. of S. Cal. IBEW-NECA Pension Plan v. Hackney*, 2021 WL 1577785, at *4 (C.D. Cal. Apr. 19, 2021) (finding plaintiffs sufficiently plead section 1145 claim for purposes of *Eitel* factors where: (1) the trusts qualified as multiemployer plans; (2) defendant was obligated to make fringe benefit contributions per collective bargaining agreement; (3) and defendant failed to make the contributions; *Trs. of S. Cal. IBEW-NECA Pension Plan v. Pro Tech. Eng'rs Corp.*, 2017 WL 10573806, at *3 (C.D. Cal. Aug. 28, 2017) (same).

In sum, the court finds Plaintiffs adequately allege breach of the Master Agreement and related Trust Agreements and a violation of 29 U.S.C. § 1145. Therefore, the court concludes the second and third *Eitel* factors weigh in favor of entering default judgment.

### 4. Sum of Money at Stake

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This factor compares the "recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Bronster Kitchen, Inc.*, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                              Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
      Sweeping, Inc.

2d 998, 1012 (C.D. Cal. 2014). "However, when 'the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate'" even for significant sums. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Plaintiffs request a total monetary judgment of $16,388.17, consisting of "the principal amount of $5,902.96, plus attorneys' fees of $9,994.90, and costs of $490.31, plus post-judgment interest as provided by law from the date of entry of the judgment herein until paid in full." (Dkt. 15-2 (Proposed Judgment); Mot. at 18-19.) Based on Plaintiffs' allegations that Defendant is contractually obligated to pay the requested damages, the court finds the Plaintiffs' requested relief is directly proportional to Defendant's misconduct, i.e., breach of the Master Agreement and related Trust Agreements. *See, e.g.*, *Bd. of Trs. of Cal. Ironworkers Field Pension Tr. v. Paz-Fairfax Steel, Inc.*, 2023 WL 3333639, at *4 (C.D. Cal. Mar. 28, 2023) (finding this factor weighed in favor of default judgment where Plaintiffs sought $192,633.14 in damages under ERISA because that sum "reflects no more than the amount Defendant owes for its breach[] and . . . is thus directly proportional to the gravity of Defendant's breach"); *Pro Tech Eng'g Corp.*, 2017 WL 10573806, at *3 (finding award of $88,397.73, consisting of "$54,391.26, interest of $7,006.98 on the unpaid contributions, liquidated damages of $10,878.24, and audit fees of $16,121.20" under 29 U.S.C. § 1132(g), weighed in favor of default judgment because damages were proportional to the harm caused by Defendant's breach of the collective bargaining agreement); *Rybkin*, 2022 WL 16949654, at *3 ("The sum of money at stake is $34,475.12 and supported by Defendant's obligations under the agreements as well as Plaintiff's audit of Defendant's contributions."). Accordingly, the court finds the fourth *Eitel* factor weighs in favor of granting default judgment.

### 5. Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. "The general rule is that a defaulting party admits the facts alleged in the complaint as true." *Constr. Laborers Tr. Funds for S. Cal. v. Anzalone Masonry Inc.*, 316 F. Supp. 3d 1192, 1202 (C.D. Cal. 2018). Thus, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of a dispute concerning material facts is remote."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
    Sweeping, Inc.

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citing
*Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010)). As
discussed with respect to the second and third *Eitel* factors, the court finds Plaintiffs "filed a
well-pleaded complaint alleging the facts necessary to establish its claims." *Phillip Morris
USA, Inc. v. Castworld Prod. Inc*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Thus, the court
concludes there is little possibility of a dispute over material facts and the fifth *Eitel* factor
weighs in favor of granting default judgment.

### 6. Whether Default Was Due to Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable
neglect." *PepsiCo*, 238 F. Supp. 2d at 1177. Where a defendant is "properly served with the
Complaint, the notice of entry of default, as well as the papers in support of the instant motion,"
the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v.
Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, it is virtually certain that Defendant's failure to litigate is deliberate rather than due
to excusable neglect because "[p]rior to, and subsequent to, the filing of the complaint,
[Plaintiffs' counsel] communicated extensively with Defendant regarding submission of its
payment of the amounts due, including engaging in prolonged settlement discussions," but
"[u]ltimately, after several rounds of discussions, the parties could not reach an agreement on
the terms of a settlement." (Thompson Decl. ¶ 13); *see Beyond Fin., LLC v. Fid. Debt Relief,
LLC*, 2022 WL 22841121, at *5 (C.D. Cal. Oct. 11, 2022) (finding fifth and sixth *Eitel* factors
weighed in favor of granting default judgment where "it [was] virtually certain that Defendants'
failure to litigate is deliberate rather than due to excusable neglect because [a defendant]
communicated extensively with Plaintiffs' counsel and was repeatedly advised to retain a
lawyer and appear in the case, yet failed to do so"); *Adobe Sys. Inc. v. Kern*, 2009 WL 5218005,
at *6 (N.D. Cal. Nov. 24, 2009) ("Defendant's voluntary decision to allow default to be entered
contradicts any argument for excusable neglect."); *Landstar Ranger*, 725 F. Supp. 2d at 922
(finding "the possibility of excusable neglect [was] remote" when the defendant was properly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                          Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

served).  Thus, the court concludes that the sixth *Eitel* factor weighs in favor of entering default
judgment.

## 7.  Policy Favoring Decision on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the
merits prevents a court from entering default judgment."  *Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation omitted).  While "[c]ases should be
decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472 (citation
omitted), "this preference, standing alone, is not dispositive," *PepsiCo*, 238 F. Supp. 2d at 1177
(quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. 1996)).  Accordingly,
"when a defendant fails to appear and respond, default judgment is appropriate."  *Allstate Life
Ins. Co. v. Markowitz*, 590 F. Supp. 3d 1210, 1217 (C.D. Cal. 2022) (citation omitted);
*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (similar).
Defendant's deliberate choice not to defend itself in this case renders a decision on the merits
"impractical, if not impossible."  *PepsiCo Inc.*, 238 F. Supp. 2d at 1177; (*see* Thompson Decl.
¶¶ 13-14 (explaining that Plaintiffs' counsel "communicated extensively with Defendant
regarding submission of its payment of the amounts due, including engaging in prolonged
settlement discussions," but "after several rounds of discussions, the parties could not reach an
agreement on the terms of a settlement" and "[a]s such, Plaintiffs were left with no option but to
file the present action and this motion")).  "Thus, the preference to decide cases on the merits
does not preclude a court from granting default judgment." *PepsiCo Inc.*, 238 F. Supp. 2d at
1177 (internal quotation omitted).  Accordingly, the court finds this factor weighs in favor of
default judgment.

## 8.  Conclusion on the *Eitel* Factors

On balance, the court finds that the *Eitel* factors weigh in favor of granting Plaintiffs
default judgment against Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
    Sweeping, Inc.

### D.    Plaintiffs' Requested Relief

Once a court concludes that default judgment is appropriate, it must determine what relief is warranted. Under ERISA, an employee benefit plan that obtains judgment in its favor in an action brought pursuant to 29 U.S.C. § 1145 is entitled to the following relief:

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in excess of
        20 percent (or such higher percentage as may be permitted under Federal or State
        law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

As noted above, Plaintiffs request a total monetary judgment of $16,388.17, consisting of "the principal amount of $5,902.96, plus attorneys' fees of $9,994.90, and costs of $490.31, plus post-judgment interest as provided by law from the date of entry of the judgment herein until paid in full." (Dkt. 15-2 (Proposed Judgment); Mot. at 18-19.)

### 1.    Unpaid Contributions

First, Plaintiffs contend "Defendant currently owes contributions totaling $3,343.90 to Plaintiffs." (Ramos Decl. ¶ 14, Ex. G.) In support of their requested relief, Plaintiffs provide the Ramos Declaration, which attaches exhibits demonstrating the underlying fringe benefit calculations. (*See generally* Ramos Decl. & Exs. F-G.) Ramos is the Director of Operating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

Engineers Funds, Inc.'s Employer Accounting Department, which includes the Audit Department. (*Id.* ¶¶ 2-4.) The Ramos Declaration explains that "Defendant submitted monthly reports to Plaintiffs" in which "Defendant admitted owing Plaintiffs fringe benefit contributions totaling $22,267.32 for work performed in January 2024 through March 2024, and May 2024." (*Id.* ¶ 14.) "On or about June 24, 2024, Defendant paid late contributions totaling $18,923.42 of the total $22,267.32 owed in contributions for the work months of January 2024 through March 2024, and May 2024." (*Id.*) Accordingly, "Defendant currently owes contributions totaling $3,343.90 to Plaintiffs." (*Id.* ¶ 14, Ex. G.) The court finds this evidence sufficient to prove the amount of contributions Defendant owes. *See, e.g.*, *Trs. of S. Cal. IBEW-NECA Pension Plan v. Fadul*, 2022 WL 2288022, at *6 (C.D. Cal. Mar. 9, 2022) (awarding plaintiff $79,475.09 in fringe benefit contributions based on audit and declaration of auditor); *Rybkin*, 2022 WL 16949654, at *3 (similar). Accordingly, the court awards Plaintiffs $3,343.90 in unpaid contributions.

## 2.    **Prejudgment Interest**

Plaintiffs request $332.33 in prejudgment interest calculated at a rate of 8%, starting from the date the contributions became due through August 29, 2024, the date this matter was set for a hearing. (Mot. at 15.) ERISA authorizes recovery of "[i]nterest on the unpaid contributions . . . calculated by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, Plaintiffs request the interest rate prescribed in the Operating Engineers Trust Funds Joint Contribution Committee Collection Policy & Procedures, or 8% per annum. (Mot. at 5; Ramos Decl. ¶ 9 & Ex. E.) Plaintiffs submit the Ramos Declaration and an exhibit substantiating the audit department's prejudgment interest calculations. (Ramos Decl. ¶ 15 & Ex. G.) The court finds Plaintiffs sufficiently support the amount of prejudgment interest requested. Accordingly, the court awards Plaintiffs $332.33 in prejudgment interest.

## 3.    **Liquidated Damages**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street Sweeping, Inc.

Plaintiffs also request $2,226.73 in liquidated damages.  (Mot. at 6.)  Pursuant to 29 U.S.C. § 1132(g)(2), a plaintiff is entitled to liquidated damages if: "(1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of the suit; and (3) the plan provides for liquidated damages."  *Hackney*, 2021 WL 1577785, at *6 (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech, Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989)).  If a plaintiff meets these requirements, an award of liquidated damages under 29 U.S.C. § 1132(g)(2) is "mandatory and not discretionary."  *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (citing 29 U.S.C. 1132(g)(2)).  The court must then award liquidated damages equivalent to "the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C).

In this case, the court finds Plaintiffs are entitled to liquidated damages.  The court has determined that it is appropriate to enter judgment in favor of Plaintiffs.  Section II.C.8., *supra*.  In addition, Plaintiffs' evidence demonstrates that Defendant owed outstanding fringe benefit contributions at the time this action was initiated and that the Master Agreement and Trust Agreements authorize an award of liquidated damages.  (*See* Ramos Decl. ¶ 16.)  "Pursuant to Article XXI ¶ H, of the Master Agreement, the Collection Policy, and Section 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], Defendant owes liquidated damages assessed at the greater of $25.00 per month, ten percent (10%) of the late paid and/or unpaid contributions, or interest on the unpaid or late contributions pursuant to 29 U.S.C. §1132(g)(2), to the respective Trusts to which the delinquent contributions are due."  (*Id.*)  Here, Defendant was late in paying or has failed to pay contributions totaling $22,267.32.  (*Id.*)  Because the Trust Agreements and Joint Collection Policy and Procedures authorize a 10% liquidated damages award, an award of $2,226.73 in liquidated damages is appropriate.  (*Id.*)  Because the "liquidated damages provided for under the plan," or $2,226.73, exceed the "interest on the unpaid contributions," or $332.33, the court awards Plaintiffs liquidated damages as provided for under the plan in the amount of $2,226.73.  *See* 29 U.S.C. § 1132(g)(2)(C); (Ramos Decl. ¶ 16).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
    Sweeping, Inc.

## 4.    Attorney Fees and Litigation Expenses

Plaintiffs also request $9,994.90 in attorney fees calculated using the lodestar method and including litigation expenses.  (Mot. at 7-12.)  ERISA authorizes recovery of "reasonable attorney's fees and costs of the action, to be paid by the defendant."  29 U.S.C. § 1132(g)(2)(D).  "The awarding of attorney's fees and costs is mandatory following a finding of an ERISA violation."  *Constr. Laborers Tr. Fund for S. Cal. Admin. Co.*, 316 F. Supp. 3d at 1201 (citing 29 U.S.C. § 1132(g)(2)).

"If a party seeks a fee 'in excess of' [the Central District's fee] schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a 'reasonable' fee."  *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018).  The Ninth Circuit uses the two-step lodestar method for calculating reasonable attorney fees.  *Id.*  At step one, the district court calculates the lodestar by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Welch v. Metro Life Ins., Co.*, 480 F.3d 942, 945 (9th Cir. 2007).  At step two, "the district court may then adjust the lodestar upward or downward based on a variety of factors."  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)) (internal quotation marks and alternation omitted).  District courts possess broad discretion "in determining the amount of a fee award . . . in view of [their] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The party seeking fees bears the burden of establishing their reasonableness.  *See Welch*, 480 F.3d at 945-56 (citing *Hensley*, 461 U.S. at 437).

### i.    Hourly Rates

Plaintiffs provide the Thompson Declaration in support of their fee request.  (*See generally* Thompson Decl.)  The Thompson Declaration shows three people worked on this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                              Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
Sweeping, Inc.

case: partner Marija Kristich Decker at $430.00 per hour, associate Thompson at $265.00 per hour, and paralegal Kimberley A. Morrison at $120.00 per hour.  (Thompson Decl. ¶¶ 3, 5.i., Ex. A.)

"[T]he district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount."  *Gonzalez*, 729 F.3d at 1205 (citing *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006)).  "'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'"  *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).  "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (citation and internal quotation marks omitted).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases . . . are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The court may also draw on its "own knowledge and experience" in setting a reasonable hourly rate.  *Id.*

The court finds Plaintiffs have sufficiently demonstrated the requested hourly rates are reasonable.  The Thompson Declaration details, among other relevant factors, the time, labor, and skill required; the novelty and difficulty of the questions presented; the amount involved and results obtained; the experience and qualifications of the attorneys and paralegal involved; and awards in similar cases.  (Thompson Decl. ¶ 5.)  In addition, Plaintiffs provided declarations from Ramos and a certified public accountant attesting to the reasonableness of the attorneys' and the paralegal's hourly rates within this district.  (Ramos Decl. ¶ 17; Khoshlesan Decl. ¶¶ 4-6.)  Therefore, the court concludes both the attorneys' and the paralegal's hourly rates are commensurate with prevailing community rates for ERISA actions in the Central District and are reasonable.  *See, e.g.*, *Welch*, 480 F.3d at 947 (concluding "the requested fees of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
      Sweeping, Inc.

$375 and $400 per hour were established as being in line with prevailing community rates"); *Fadul*, 2022 WL 2288022, at *7 (finding rates of $290 to $390 for counsel and $120 for a paralegal reasonable for ERISA cases in the Central District); *Hackney*, 2021 WL 1577785, at *7 (finding rates of $300 to $390 for attorneys and $120 for paralegals reasonable for ERISA cases in the Central District); *Trs. of the S. Cal. IBEW-NECA Pension Plan v. Arce*, 2022 WL 1620200, at *7 (C.D. Cal. May 23, 2022) (finding rates of $200 to $390 for attorneys and $120 for paralegals reasonable for ERISA cases in the Central District).

### ii.  Hours Expended

The district court also must "independently review" a party's fee request to determine the number of hours reasonably expended.  *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992).  A "reasonable" number of hours is an amount that "could reasonably have been billed to a private client."  *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno*, 534 F.3d at 1111).  If the court determines records submitted by a prevailing party contain entries for "excessive, redundant, or otherwise unnecessary" hours, *Ingram*, 647 F.3d at 926 (quoting *Hensley*, 461 U.S. at 434), the court may exclude them either by (1) "conduct[ing] an hour-by-hour analysis of the fee request and exclude those hours for which it would be unreasonable to compensate the prevailing party"; or (2) "when faced with a massive fee application[,] the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application," *Gonzalez*, 729 F.3d at 1202.

In this case, 34.30 total hours of work were billed—7.40 hours by the partner, 23.40 hours by the associate, and 3.50 hours by the paralegal.  (Thompson Decl. ¶ 3, Ex. A.)  The Thompson Declaration attaches billing records detailing the tasks performed by each attorney or paralegal.  (*See id.* Ex. A.)  The court has thoroughly reviewed the Thompson Declaration and the attached billing records and finds that the billing records do not contain duplicative, excessive, or unnecessary hours.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

**CIVIL MINUTES – GENERAL**                                                      **19**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
    Sweeping, Inc.

(9th Cir. 1986).  Therefore, the court finds the 34.30 hours expended on this matter reasonable. *See, e.g.*, *Bd. of Trs. of Kern Cnty. Elec. Workers Health & Welfare Tr. v. McCaa*, 2021 WL 3829212, at *6 (E.D. Cal. Aug. 27, 2021) (finding 53.20 hours of work expended by attorney on ERISA default judgment reasonable); *Dist. Council 16 N. Cal. Health & Welfare Tr. Fund v. Sinnock*, 2021 WL 1817056, at *9 (N.D. Cal. May 6, 2021) (finding 98.60 hours of work by attorneys and paralegals on ERISA default judgment reasonable).

The court therefore concludes the lodestar amount equals $9,803.00.

### iii.  The *Johnson/Kerr* factors

After calculating the lodestar, the court "'may then adjust [the lodestar] upward or downward based on' twelve factors identified in *Hensley*."[2]  *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (alteration in original) (quoting *Moreno*, 534 F.3d at 1111).  The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[2] In the Ninth Circuit, these twelve factors are referred to as the "*Kerr* factors," in reference to *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), the case in which the Circuit first adopted them.  *Klein*, 810 F.3d 693, 698 n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                    Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
      Sweeping, Inc.

*Hensley*, 461 U.S. at 430 n.3; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th
Cir.1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557, 112
(1992).

    In this case, the court finds the *Johnson/Kerr* factors, addressed in the Thompson
Declaration, do not warrant any enhancement or reduction in the requested fees. (*See*
Thompson Decl. ¶ 5.) Accordingly, the court concludes Plaintiffs are entitled to $9,803.00 in
fees.

### iv. Litigation Expenses

    Plaintiffs also request $191.90 in litigation expenses, including $6.50 related to printing,
and $185.40 for chamber's copy deliveries. (Thompson Decl. ¶ 6.) "'[R]easonable attorney's
fees' include litigation expenses only when it is 'the prevailing practice in a given community'
for lawyers to bill those costs separately from their hourly rates." *Trs. of the Constr. Indus. &
Laborers Health & Welfare Tr. v. Redland Insurance Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006)
(quoting *Jenkins*, 491 U.S. at 286-87).

    Here, Plaintiffs provided an invoice of their litigation expenses and declarations attesting
that billing separately for costs stemming from printing and chamber's copy delivery is the
prevailing practice in the Trust Fund litigation community in Southern California. (Thompson
Decl. ¶ 6, Ex. B; Ramos Decl. ¶ 17; Khoshlesan Decl. ¶ 6.) Based on the record, the court finds
Plaintiffs have sufficiently demonstrated that the litigation expenses they seek are recoverable
as part of an attorney fee award. *See, e.g.*, *Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d
1046, 1060 (C.D. Cal. 2019) (stating "costs relating to the filing fee, service of process[,]
certain photocopies, and subpoena fees" are recoverable as attorney fees in an ERISA action);
*Hackney*, 2021 WL 1577785, at *7 (awarding litigation expenses consisting of $149.35 in
online research costs and $3.75 in copying in ERISA action seeking default judgment); *Arce*,
2022 WL 1620200, at *7 (awarding litigation expenses of $118.39 because plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                          Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

declarations demonstrated that billing those expenses separately was the prevailing practice in
the community).  Accordingly, the court also awards Plaintiffs $191.90 in litigation expenses,
for a total attorney fees award of $9,994.90.

### 5.  Costs

Plaintiffs request $490.31 in costs attributable to the civil case filing fee and the fee for
serving Defendant.  (Thompson Decl. ¶ 6, Ex. B.)  As discussed above, 29 U.S.C. § 1132(g)(2)
mandates that the court award "reasonable attorney's fees and costs of the action" where a plan
prevails in an ERISA action.  29 U.S.C. § 1132(g)(2)(D); *see also* Fed. R. Civ. P. 54(d)(1); C.D.
Cal. L.R. 54-1 (stating the prevailing party, or "the party in whose favor judgment is entered,"
is entitled to costs).  Courts may award "taxable costs" such as: (1) fees of the clerk and
marshal; (2) fees for transcripts necessarily obtained for use in the case; (3) fees and
disbursements for printing and witnesses; (4) fees for necessarily obtained exemplification and
copying costs; (5) docket fees; and (6) compensation of court appointed experts and
interpreters.  28 U.S.C. § 1920; *see also* C.D. Cal. L.R. 54-3.  In addition, if a statute's fee
shifting provision permits recovery of reasonable attorney fees, the court has discretion to
award non-taxable costs to the prevailing party.  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606
F.3d 577, 580 (9th Cir. 2010).

Plaintiffs, as the party awarded default judgment, are the prevailing party and thus may
recover costs associated with the civil filing fee and service of process pursuant to 29 U.S.C.
§ 1132(g)(2)(D), Federal Rule of Civil Procedure 54(d), and Local Rules 54-3.1 and 54-3.2.
*See* L. R. 54-3.1 & 54-3.2 ("Reasonable fees for service of process under F.R. Civ. P. 4 . . . are
taxable, including reasonable fees for research, surveillance, wait time, and parking incurred in
connection with service.").  Accordingly, the court awards Plaintiffs $490.31 in costs.  *See
Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013) ("Rule 54(d)(1) codifies a venerable
presumption that prevailing parties are entitled to costs."); *Save Our Valley v. Sound Transit*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00795-FWS-ADS                              Date: August 29, 2024
Title: Trustees of the Operating Engineers Pension Trust, *et al.* v. Consolidated Street
     Sweeping, Inc.

335 F.3d 932, 945 (9th Cir. 2003) (stating the court need not "specify reasons for its decision to
abide the presumption and tax costs to the losing party").

### 6. Post-Judgment Interest

Finally, Plaintiffs request "post-judgment interest as provided by law from the date of
entry of the judgment herein until paid in full." (Proposed Judgment.) "Because 'ERISA does
not expressly address the availability of post-judgment interest . . . the federal post-judgment
statute, 28 U.S.C. § 1961, governs.'" *Hackney*, 2021 WL 1577785, at *7 (citation omitted). 28
U.S.C. § 1961 mandates an award of post-judgment interest "on any money judgment in a civil
case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from
the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant
maturity Treasury yield, as published by the Board of Governors of the Federal Reserve
System, for the calendar week preceding the date of judgment." *Id.* Because Plaintiffs
recovered a money judgment in a civil case, the court concludes Plaintiffs are entitled to post-
judgment interest under 28 U.S.C. § 1961. The court awards Plaintiffs post-judgment interest
calculated at the rate prescribed by 28 U.S.C. § 1961 from the date judgment is entered until the
judgment is paid in full.

## III.    Disposition

For the reasons stated above, the Motion is **GRANTED**. The court awards Plaintiffs
$3,343.90 in unpaid contributions; $332.33 in prejudgment interest; $2,226.73 in liquidated
damages; $9,994.90 in attorney fees, including litigation expenses; $490.31 in costs; and post-
judgment interest at the rate prescribed by 28 U.S.C. § 1961 from the date judgment is entered
until the judgment is paid in full. The court will enter judgment in accordance with this Order.

Initials of Deputy Clerk:  mku